Today's case is number 22-1157, United States v. Henri Salvador Gutierrez. At this time, would counsel for the appellate please introduce himself on the record to begin? I'm Stephen Super, for Mr. Gutierrez. This is attorney George Gormley, also for Mr. Gutierrez. You can begin. Thank you. It's Henry, by the way. Henry Salvador Gutierrez. I thank you, your honors, for listening to this case one more time. It's been 23 years this week since this court issued its decision, United States v. Patrick. And in looking over that case, a RICO case that was brought against a gang, the decision that was made by, I believe it was Judge Lynch who wrote the opinion at the time, was that Patrick's partner, who was named Arthur, had used minors in what was a drug scheme. They had juveniles around the corner selling drugs. And they did this for a purpose, because they thought, probably mistakenly, that police wouldn't take much interest in seeing kids on the corner, so they could fly under the radar, and if they got caught, they wouldn't go to adult court. So they were actually affirmatively using minors to commit a specific crime. And there was enough evidence in the Patrick case that Mr. Arthur, at trial, could have been convicted of using minors, because he did. That's not the ground we relied on. That's not the ground they relied on. So the ground I thought we relied on is that even if there wasn't enough evidence of him using that, he still could be responsible, because it was foreseeable about the conduct of others. Right. And you're challenging that, correct? I'm challenging that, because there was enough. And our argument is that, in using this section of the guidelines, 3B1.4, that the Patrick case, by saying that his use of minors was not direct, that it was actually Patrick who was using minors, and that he saw that that was happening, and it was part of the conspiracy, that he was also liable for that particular enhancement. And we think that that interpretation has expanded 3B1.4 to a point where it was not intended. You're sort of arguing that Patrick doesn't hold contrary to you and could rule your way consistent with Patrick. And if that was the case, we wouldn't be here today and en banc. It wouldn't be binding authority. A panel would decide it one way, and we'd only go en banc if the panel, undriven by Patrick, had gone away that the majority of the judges disagreed with. So don't you really need to argue that even if Patrick holds, as it seems to me to hold, we should deviate from that now that we're sitting en banc for reasons A, B, and C? Correct. For the reason that that interpretation expands this to a point that goes beyond its intent. When the government gets up, he's going to make a very technical argument. He's going to talk about the texture of the writing, the rule of construction, and the rich and varied history of the guidelines. And I know that an appellate court uses that, in many cases, to decide. I can't make a great case like that. I can only tell you that in looking at this particular provision, when it was passed, it was directed in the mid-'90s toward defendants and what they did in committing a federal crime. Okay. How does that sync up with the language in 1B1.3, such that because of that, 1.1B3 doesn't support Patrick? Well, for starters, that particular provision, when it was quoted in Patrick, did not include the very first words. It's just a subordinate clause that says, unless otherwise specified. And our argument is that, I guess it would apply to almost everything in Chapter 3, Part B, which is the role in the offense, is that that otherwise specifies that these particular provisions within this part of the guideline are not meant to be applied conspiracy-wide. That this is a judge's look into the eyes of the defendant and saying, this is what you did to commit this particular offense. Counsel, why isn't it still an individualized determination, which I think is sort of what you're arguing, for a district court to say, even if I'm applying the foreseeability test, which I know you don't want us to apply, but even if I'm applying that, I'm still making an individualized determination because I have to conclude that this particular defendant, it was reasonably foreseeable to this particular defendant that others in the conspiracy would use a minor. So why is that a problem? Why is that interpretation wrong? Because it's still looking at the defendant. Right, but the crime that he would be committing, or at least his role in the offense would be, I stood by while this guy got a minor involved in our conspiracy. That's not an enhancement. That's not conduct. That's just a passive, I noticed, I didn't jump in there to stop it from happening. And we're saying that that's not conduct. That deserves a two-level increase under the guidelines. Is that more of an affirmative act argument rather than what I was getting to, which is, you know, I think your first argument was that you're not really looking at what the defendant is doing if you're looking at what a co-conspirator is doing. That's right. Under this particular chapter of the guidelines, or under this Part B of Chapter 3, because it's a role in the offense. And this particular provision is written very clearly, that the defendant must use in some way a minor, someone under the age of 18. Is there something to the text, I know you rely on this unless otherwise specified, but in 1B.1.3, A talks about all acts and omissions of the defendant. Right. Obviously they're not relying on that. No. And then B talks about all acts and omissions of others. So does the fact that the guideline here tells us to focus on the role of the offense of the defendant not fit very well into B, wholly independent of unless otherwise specified? Because what the government's asking us to do is to look at the acts and omissions not of the defendant. Right. Or is it what they're saying is we're looking at the, the role in the offense is focused on the defendant, not a person who is in the conspiracy. The only defendant is your client. Correct. But they want us to look at the acts of others. Yes. So there's a disconnect between the guideline that they're relying on and the text of 1B.1.3, 1B, A, 1B. I don't think there's a disconnect. It's just it's discounting or omitting completely the subordinate clause that not everything in Chapter 3 is going to be applicable to a conspiracy and a strict liability application of its provisions. That particular. But what I'm asking is, is that a function of the word others in 1B.1.3, given that the guideline that's using to view the enhancement refers not to others, but the defendant and has nothing to do with unless otherwise specified. So you would win even without unless otherwise specified having any work here. Well, that's that's our argument. And I've looked at some other case law regarding 1B.1.3, because even the prelude to Chapter 3, the role in the offense, talks about relevant conduct and talks about the possibility of the scheme, the common scheme or plan. I found one case in the Tenth Circuit that went back in 1991. The judge looked at that language because it had just gone in and said that the sentencing judge can look at the underlying scheme itself rather than the mere elements of the charge conspiracy, which says to me that you're still looking at what did the individual defendant do in that particular case? Was his actions part of the scheme or part of the conspiracy? And I think the way this is being applied to Henry was that it encompasses all of their conduct, not just his. Because we've argued that even though the court made, the district court made an individualized finding that he had used a minor and did so, the justification came after the ruling,  our argument remains that there was no evidence of sufficient liabilities and additional reliability that showed that he did that. Consider two examples. A defendant who joins a conspiracy that employs no minors. A defendant who joins a conspiracy that foreseeably does recruit minors within the scope of the conspiracy, but the defendant doesn't participate in it. Under your view, would the guidelines differentiate between those two defendants? Yes. And how is that? Because the other interpretation makes the person who joins that conspiracy liable for the acts of others as far as minors go. Now, this was an MS-13 case. And in all of the charging documents, including the indictment, talked about MS-13 having as part of its common scheme recruitment of minors. And what it didn't say was why. Because in Patrick, as I mentioned a few moments ago, Patrick had a reason for getting minors involved. They were part of a way to commit the crimes, which was selling drugs on the corner. And in all the cases in the circuit courts that have found affirmative use, there was a reason to have the minor there. And in an MS-13 case, in our specific case, that had to do with this one small clique that was up near Lynn, minors weren't recruited to commit crimes. They were committed to be members. They were warm bodies as part of the membership. There wasn't a reason for having them there other than numbers. And as the government said in the hearings that led up to the sentencing, you didn't have to do anything. You were guilty as long as you were part of the conspiracy, which is something that I noticed the way this is being applied. It was applied in our case. It's in a racketeering case. There's two different – it's hard to sometimes disentangle the different issues, so I want to make sure that I'm understanding it. If there was evidence that one of the members of the clique did use a minor to commit a crime, you're not disputing that the minor guideline applies to that defendant? No, I'm not. Okay. And if it's reasonably foreseeable to another member of the clique that that other member of the clique did use that minor, what is your view then as to whether the guideline applies? I'm assuming you're saying it does not apply. I'm saying that the guideline – this particular guideline does not apply to the defendant who did not affirmatively use that particular minor. Okay, and that's why you think Patrick – in that sense, if Patrick's understood to say otherwise, you say Patrick's wrong, and you're relying on the unless otherwise specified. And I guess when you said to me, you also may be relying on the use of the word others being in conflict with the word defendant in the guideline itself. Correct. Okay. Anyone else want to address anything relating to the Patrick issue? Yeah, let me ask one last question about Patrick. Yes, Your Honor. There's been a circuit split since 2001, then 2005, you know, I think. Yeah, yeah. 2001 and then – Yeah, 2005 was the second circuit. Yeah, the second circuit, and then the others in the Ninth Circuit and 10th in 2001. But the Sentencing Commission has had more than two decades, and the last couple of years there was no quorum. But before that there was, there is quorum now. And they can resolve circuit splits. And this is not in this commission's cycle for the agenda for the new amendments. So my question is, what's your position, given that the commission is not active and they definitely must know there's a split? If it hasn't acted, isn't that a sign that maybe our reading in Patrick was not an incorrect reading necessarily? And I'm going to ask the same question from the government. Thank you. It's – well, I don't know the inner workings of the commission. I imagine that things come up as they increase in importance. If you look at all the cases that have decided affirmative use of a minor, there aren't that many over the last 20 years. You have a 2005 case in the Second Circuit out of New York, Lewis. There hasn't been that much activity since then. And, frankly, this, the First Circuit hasn't had a lot of cases that dealt with it either. So you would sort of say, like, the issue has been revived now with this case and it had been kind of dormant up there. Yeah. And the people who, you know, the defendants that were in our case, because the government made an issue of it, is that some who signed plea agreements agreed to have that enhancement applied to them. And our position on that is you can have any manner of reasons for signing a plea agreement. And they did that to dispose of their case. And we're the only ones that really talked about it. Go ahead. You can ask about it. I wanted to ask about training. Yeah, go ahead. Okay. Can I just move you over to a different part of your argument? And this has to do with the response to the government's position that there was an alternative finding by the district court below on training. Correct. And so I just wanted to direct your attention to page 321 of the appendix and feel free to take a moment to go there if you need to. But what I read what the district court said there, and I'm going to, you know, largely quote to you what I read. He said that the evidence in this case proves by preponderance that Vacareno Canas personally recruited and trained minors. Lopez Flores and Salvatore Gutierrez did too. In addition, Salvatore Gutierrez directed a minor race, and it was reasonably foreseeable to Canas, Gutierrez, and Dugans that minors would be recruited. So it seems to me there that the district court first finds fairly clearly that there was actual personal recruitment by your client and then has these alternative holdings in addition, et cetera. Can you respond to that? Yeah, I don't remember him talking about Reyes, who was named in the indictment, along with the other five. And just so you know, I quoted that to you. So that's exactly what the district court said. My response to that, well, first of all, these are discussions that we did not have with the district court in two days' worth of hearings on this issue, because after everybody pleaded guilty because nobody went to trial, the court took the outstanding objections from the PSRs, and there were outstanding objections to the use of a minor. I don't recall anything about him using the defendant named Silencio. Silencio was part of the group that stabbed to death a young man in July of 2018, and he did so on his own accord. And under the findings of the courts that the other circuit courts that are in disagreement with this one, there was no affirmative use. They were partners within the conspiracy. And I don't know what the fact finding of that is, of him directing Silencio to do anything, especially during that day. Now, he did talk about another minor who was a confidential witness. Do you think the district court may have just misspoken the wrong name there in using Reyes? Well, the district court, the one time that the judge brought up to me during that hearing about any affirmative use of minors by our client, he said that Henry had been shown to have gone and recruited people into the high schools. And I pushed back on him immediately on that. I said, no, that is not true. The evidence is that Baccarone-O'Connors and CW24, who they called corrupto, they were the two. He was conflating the names of those two defendants. And I affirmatively said that there is no evidence that in the one month that Henry was part of this particular group, did he recruit anyone or train anyone or direct anyone to do anything. Didn't one of the confidential witnesses testify that he was brought in, shown videos by a group that included your client, they were reasonably seen as training videos, and then your client participated in beating the witnesses as part of the ritual of bringing people in and keeping them from leaving the conspiracy? And in that same filing, there was evidence from another confidential witness that they never beat anyone. Let me take you a step at a time. If what that witness said happened, would you agree then the adjustment applies? Well, looking at the culture of MS-13, there's beatings that take place for two reasons. One is to initiate a person into the gang, and the other is to punish them for something they did or didn't do. And 3B1.4 doesn't talk anything about punishing a minor as using them. It talks about intimidating, but punishment is not intimidation. And here I thought that in order for the recruitment to be a use of a minor in the offense, would it be the case that the minor would have to have been recruited for the purpose of committing the racketeering acts that would facilitate MS-13, as opposed to just being a warm body for MS-13? I would agree with that. I believe that's true. Now, obviously, if you have a member of a criminal conspiracy, then... But there's not evidence of them being recruited into this clique, as opposed to the enterprise. Well, that was an argument that we made many times. But it was the government that connected this particular group to the transnational. But if they did recruit them into the enterprise for the purpose of committing racketeering acts to benefit the enterprise, that would be a use. That would be an affirmative use. But a bare finding that he was recruiting people without any further discussion of what that means. Well, the particular witness that you were talking about talked about watching videos in some motel room and that these were training videos that apparently are on YouTube. And the government's attorney, who's not the appellate attorney with us today, but the one who did the district court case, directly asked that confidential witness, when he started hanging out with the psychos, that was the name of the clique, did the senior members show you this particular video? Because they had just shown the video to the grand jury. And he said yes. And CW-19 was in this group a year before Henry joined. He had been hanging around them and that wasn't lost on the grand jury and it wasn't lost on the district court judge who read this transcript. So I'm not sure how Henry would have trained him or even been present for that particular event a year before because he was in jail at the time. But that has to do with the reliability of that evidence rather than whether those specific acts should constitute an affirmative act of using a minor. That's true, Your Honor. And those are the specific facts of our particular case. But we did argue that there was not sufficient additional reliability to what the judge determined after he made his ruling that everybody gets this particular enhancement, including Henry Salvatore Gutierrez. Counsel, just turning you back to whether this alternative finding was made, which I think is a different question of whether you think it was clearly erroneous because it wasn't supported by enough evidence. And I understand your point that you're not sure why the district court refers to Reyes there. But again, when I look at the record and I look also at page 297, which is a little bit earlier on February 8th, the district court says, look, I'm not persuaded that the guideline is unlawful to the extent it applies to people under 21, which is another argument that was being made during the hearing. Yes. And then he goes on to say, if I then find the facts in a certain way and find that either the defendants directly used a minor as part of MS-13 recruitment and training, for example, or that it was reasonably foreseeable to them that a co-defendant would, under Patrick, I can give them a two-point enhancement. So it says either or. And then on the page that I quoted to you before, he says, I find by preponderance of the evidence that Canas personally recruited and trained minors and Flores and Gutierrez did too, and in addition, Gutierrez directed a minor in connection with the Rivas murder, and it was reasonably foreseeable to him that others would. So do you disagree that the district court made these alternative findings for the enhancement, that it wasn't just based on the Patrick reasoning? I don't disagree that he made them. He definitely made them. I disagree with his basis for making them. But is it factual? That's what we're trying to understand. Are you saying it's clearly erroneous, or do you think there's a legal error? No, I think factually it's erroneous. There were no facts and evidence that confirmed that particular finding. He found on both bases. He clearly told us that he had to follow Patrick. So if it was proven for one, it's proven for all. But he also made individualized findings. But as things played out. Are you saying that the finding that he recruited doesn't say for what purpose, it just says he recruited, is enough? And I'm saying that that's as applied to our particular client, that there's no basis in fact of that. I understand that. But are you saying that if there were a basis in fact, that would be enough to support the enhancement, even though it just says what he did was recruit, doesn't say he recruited him into MS-13 for the purposes of committing the racketeering activities? I believe it applies for the second thing you just said, that you're recruiting them into MS-13 for the purposes of being in a criminal enterprise. When you say it applies, I'm not understanding. Are you saying the finding should be understood to be finding that? Or are you saying it should not be understood to be finding that? Or are you saying that there's no evidence to support the finding, no matter what it is? I can't tell quite what you're saying. In our case, there's no evidence to support that finding. Beyond that, assuming there's evidence to support that finding, what do you understand that finding to be of? Well, he found it for other defendants. But for this, your defendant, he also found, as Judge Ruckelman points out, that he recruited and trained. What do you understand the import of that finding to be, assuming there's evidence to support it? Well, if there was evidence to support it, I would have to conceive that that's the ruling. There wasn't evidence for it. And I realize that this is not the body to be arguing that. That should have happened before the district court, and it did not. But our position is that there was not that reliable evidence that Henry did that. Now, in the cases of Falker-Anconis and others, including CW24, there was definitely evidence. I thought in your brief you were suggesting that even if there was evidence of showing the training video and even if there was evidence of the beating, the finding that there was recruiting is not evidence that he recruited the person into MS-13 for the purpose of committing the racketeering acts. So it wouldn't mean that the guideline applies. But apparently you're conceding otherwise. I'm not conceding it in the case of our client. And MS-13 is unique in that sense that it doesn't appear to exist for any other reason other than to commit violence. And it was said a number of times during the case that if you're in it, and the attorney for the government said this, you don't have to have done anything. You're simply guilty because you're part of it. So I don't know. I'm not sure I understand the question any more than you understand my answer on that. Well, good point to end on. Thank you very much. Thank you very much, Your Honors. Thank you, counsel. At this time, the counsel for the appellee, please introduce himself on the record. Good afternoon, Chief Judge Barron, and may it please the Court, Mark Quinlivan on behalf of the United States. I was planning on focusing my argument on the first question presented, but I just want to close the loop on the last discussion that we had about the affirmative act. So two points in answer to your question, Judge Rickleman. I do believe on page 321 of the record appendix that the district court misspoke when he said Reyes. And that's clear when you then look at the carryover on pages 323 to 324. He meant Corrupto. That's right. He meant CW24. So that was an explicit finding as to the, quote, unquote, move over right before the defendant started to stab and join in on the attack on Harrison Rivas. On the other finding, which was, and that's really on pages 321 to 323, that was based on a different cooperating witness, CW19, and the court found that the defendant, along with other members of the psychos clique, recruited, trained, and intimidated a minor. And in particular ‑‑ For what purpose? Because the thing that's throwing me off is below, if I'm understanding the PSR and even the government sentencing memorandum, which does refer to CW19, with respect to the recruiting and training seemed to be focused on reasonably foreseeable was the theory by which the recruiting and training would be the route to the application of the guideline as opposed to recruiting and training would be itself an affirmative use. And it certainly was in relation, Chief Judge Barron, but I point your honor to page 212 of the record appendix. It was the government's response to the defendant's sentencing memorandum  personally engaged in recruiting and training. Yes, but what I'm focused on is a slightly different point, which is recruiting and training for what? And if I understand it, even when you referred in the sentencing memorandum to CW19, it was still in the context, at least it's not clear to me it wasn't, of making the argument that it was reasonably foreseeable and therefore Patrick would apply. There's some language where you say specifically not just that he did this, but that because he did this, that alone would be an affirmative use? Yes, that's on page, you'll find that on page 212 of the record appendix, and that's the government's reply to the defendant's sentencing memorandum. In fact, I'll... See, here it is, there can be no real dispute that MS-13 homeboy like Salvador knew that the gang would use a minor to further the gang's activities. Indeed, as to Salvador, the MS-13 enterprise use of minors was not only reasonably foreseeable, but Salvador personally associated with multiple minors. It's not clear that that's saying therefore it was an affirmative use. Well, and just what it goes on to say then is, but Salvador personally associated with multiple minors as part of the charge racketeering conspiracy. For example, the pre-sentence report discusses how the gang recruited... How the gang? How the gang? It doesn't say him. It does say him because it's talking about Salvador in particular. And again, I would point out CW19... In the pre-sentence it says, it discusses how the gang recruited an attempt to use CW19, a juvenile. It does say Salvador and other clique members punished him for non-commitment to the gang. And you then take into account... And so the idea is that that's an argument that that alone is an attempted use? It is, and I'd point out that it's not just that it's the gang. CW19 made clear in his grand jury testimony that the defendant was one of the people who did so, and the district court made that express finding with respect to CW19. In addition, the district court said it wasn't just recruiting in general. It was recruiting where they discussed the mode of operation of MS-13, which included particularly killing rivals. So I guess I'll put the question just straight. The part that concerns me and the reason that seems to be worth making clear we get it precise is given the length of the sentence. Since Patrick was in play and most of the argumentation was about reasonable foreseeability, in fact I believe at the panel level the government was not even arguing that there had been a finding of affirmative use based on recruiting. There is a question whether the district court in these various sentences, which are to me not the easiest to decipher, they're a little elliptical. Definitely he finds there's recruiting and training, but for what end? Whether that's all in service of the conclusion that it's reasonably foreseeable, or whether there's a clear finding that the kind of evidence that's present here of recruiting and training suffices to satisfy the affirmative use in and of itself. That's not to say that the evidence does not support it. It's just a question of whether the district court made such a finding so that we're effectively on clear air on that question. Certainly, and the answer to the question is the district court did make that finding. Again, it's on pages 321 to 324. The court expressly found that on page 321 that the defendant also engaged in the recruitment and training of minors, and not just in the abstract, but that that included killing rivals as the core operating principle of MS-13. The court also, and it's on page 323, found that the defendant was one of the people who beat CW-19 because of his supposed not following gang principles, and that that was a form of intimidation under the minor use guideline. But I guess maybe just to drive it home, in light of the offense that we're dealing with, does the recruitment have to be for the purpose of not just joining the enterprise, but for the purpose of committing the racketeering acts that would facilitate the enterprise? Yes, I would answer that that would be correct, but in this case, again, the core operating principle, and that's what the district court expressed. Well, he says this is the core operating principle of the gang. I guess the question is whether he made a finding that this particular defendant engaged in the recruiting for that aim as to any particular minor. Yes, because on page 323, again, the court talked about how CW-19 talked with members of the gang, including the defendant, about the principles of MS-13, and that one of those principles, the core one, was killing rivals. Counsel? I'm sorry. No, please finish. I'm just going to say that that's separate and independent from the district court. The district court also made an alternative finding that the defendant had directed a minor within the meaning of the minor use guideline by telling them to move over when they were sitting on the same tree limb right before he jumped in to stab Herson Rivas to death. I just wanted to try and separate out the recruitment and training findings for a minute. So I looked at those pages that you're citing, and I have them in front of me, so I know exactly what the district court said. But the question I have for you is in terms of watching the videos, is it legally sufficient, putting aside whether there was enough evidence, whether it was reliable, is it legally sufficient that they were all in the room together? If Mr. Gutierrez was there with CW19 and they were watching these videos and the videos were exactly what the grand jury saw, is the fact that they were just sitting there together legally sufficient for this enhancement? Because it seemed to me when I read the cases that the one thing that the circuits do agree on, I think almost all the circuits agree on, is sort of mere presence of a minor in what you're doing is not enough. And so for the watching the video part versus the beating part of the enhancement, is watching videos together just because a minor is there, is that legally enough under the case law? I don't think, Judge Rickleman, I don't think that standing alone is enough, but that's not solely what the evidence was in this case. And this is both based on the district court's assessment of the pre-sentence report and CW19's testimony where the court found it wasn't just that they were watching a video about MS-13, that watching the video was part of the recruitment process itself into MS-13. No, I understand that, but I'm just saying even taking that as true, the fact that they're just sitting there together. I mean, there's no evidence that it was Mr. Gutierrez's phone that the video came from or that he set up this whole video watching event that they were doing. It just seems that the evidence, because, again, I read what CW19 actually said. It seems like they were just sitting there together in a hotel room, and the case law seems pretty clear that just because a minor is present when something is happening is not enough for the enhancement. So I was just wondering what the government's view was. I think the answer is that it is enough in that context because it's not just the defendant sitting there. The defendant and the other members of the clique were showing the video as part of the recruitment process itself, which, and again, the district court was assessing both the particulars of CW19's testimony and the background principles in the pre-sentence report that talked about how MS-13, as an organizing principle, will try to recruit PAROs or young people from high schools in eastern Massachusetts, and that as part of that process they show them recruitment videos that detail how the operating principles of MS-13 to attack and kill rivals and that that's part of the recruitment process. Now, Judge Rickleman, just to note, even if possibly that finding alone wouldn't be enough to support the affirmative use, the district court also found that the defendant and others personally spoke with the defendant about the operating principles of MS-13 and separately that the beating that they did at CW19 was not just part of recruitment, but it constituted intimidation. And, of course, recruiting, training, and intimidation all fall within the definition of use or attempted use of a minor under Application Note 1 of the Minor Use Guideline. Can you tell me whether the government has a view on what I take to be a circuit split, although I didn't see it in the briefs, on partnering with minors, the Seventh Circuit taking the view that if you partner with a minor you don't have to show additional affirmative uses, presence is sufficient, other circuits say no, you need more. Does the government have a view on that circuit split? I don't, I can't standing here today, Judge Howard, answer that because with respect to the quote-unquote the reasonable foreseeability issue, we know that the Seventh Circuit has taken the minority position that it doesn't apply to 3B1.4, and that was the sort of circuit split that we were focused on. And if I could move to that, and if I could just briefly walk through the steps. I'm sorry. Go ahead. Can I just ask you one question before you move? When we're looking at 3B1.4 and we're looking at the, you know, it refers to the offense, how would you ask us to define the offense that we're looking at here in this particular case? I think the offense is plainly legal conspiracy. And it leads me to, like, I want to walk through the steps of why we think we have the better reading of what really is the intersection of the minor use and the relevant conduct guidelines. So 3B1.4, of course, is part of Chapter 3. Section 1B1.3a of the relevant conduct guidelines says that, quote, unless otherwise specified, the adjustments in Chapter 3 are to be determined on the basis of the following. One subdivision, A1B, says, in a jointly undertaken criminal activity, all reasonably foreseeable acts or omissions that are within the scope and in furtherance of the jointly undertaken criminal activity. And we know what unless otherwise specified means because the Sentencing Commission told us. In the background commentary, the Sentencing Commission said that Section 1B1.3a establishes a, quote, rule of construction by specifying that in the absence of a more explicit instructions in the context of a particular guideline how a defendant's offense level is to be calculated. And the way I see that is there has to be, A, an instruction, something that tells you directly what needs to be done. It has to be explicit. It can't be implicit. And, three, it has to be in the context of a particular guideline. There isn't some other across-the-board rule that is unstated that qualifies as unless otherwise specified. So we now return to the minor use guideline, which simply states that a defendant's offense level is increased by two levels if the defendant used or attempted to use a person 18 years or younger in the commission of, or to avoid detection of, or apprehension for the offense. There's nothing in that guideline, the text of that guideline, or any of the application notes that constitute an instruction, let alone a more explicit instruction in the context of a particular guideline. Unless I'm, I may be missing something, but if we put aside the unless otherwise specified for a second, since the minor use guideline refers to the defendant, and you're relying on 1B1.3A1B, you're reading the word others to connect up with the word defendant in that guideline. Is that right? No, I don't think that's right, because I'm reading it in the context of the plainly stated intent of the commission that what is set forth in 1B1.3A applies unless other, in the absence of a more explicit. I'm just trying to, just tell me where this is going wrong. B says all acts and omissions of others. That's what the defendant is responsible for. And now the guideline says look at what the defendant did. Did the defendant use a minor? That's what the guideline says. So how does that make it possible to use that guideline to say he's now responsible for what some other defendant did? Because the background principle that applies not just to Section 3B1.4, but to all of the provisions in Chapter 3 and certain provisions in Chapter 2, are that a defendant's relevant conduct does include the reasonably foreseeable acts or omissions of another in a conspiracy case that is within the scope and in furtherance of the conspiracy. And the only exception is where there is. But what I'm saying is yes, it does. Acts and omissions of others. So if we're dealing with an act or omission of another, we would say if the guideline that we were doing with the adjustment was if a gun was involved, even if it was another's gun, 1.3, whatever, B, B would say it applies. Right? Even though it's another's gun. It wasn't under A. It wasn't something the defendant did, but it was a joint enterprise and that's there. But this particular guideline is saying you enhance it for something the defendant did. And I'm having trouble seeing how since that's what it does, how B gets you to be able to say, well, that guideline applies based on what some other defendant did. And I just want to understand what the text does that enables that. The text does that because you can't look at 3B1.4 without taking it in conjunction with the background principles set forth in the relevant conduct guideline. That's B. Pardon me? That's the text of B, right? It's not just the text of B. It's also the commentary that says that this is a rule of construction that applies in the absence of a more explicit instruction. But I'm just saying, how does the text of B get you to where you want to go? Well, the text of B, when it defines what a jointly undertaken criminal activity, includes the word undertaken by the defendant. So there's nothing in B itself that is internally inconsistent with the government's argument in this case. And I would point out in addition to Judge Barron that it's notable that we do know what constitutes a more explicit instruction in the context of a particular guideline because the Sentencing Commission has enacted multiple application notes that do cabin a defendant's accountability under the relevant conduct guideline. And in each one of them, they say that it limits a defendant's accountability to the defendant's own conduct or conduct that he or she aided and abetted, counseled, commanded, induced, procured, or willfully claused. If you focus for a minute on moral accountability, moral culpability, does the government see a difference between joining a conspiracy that you know or foreseeably would know routinely employs children to commit crimes as opposed to joining a conspiracy that commits crimes but not with children? I think, Judge Chioda, that certainly in the former instance, I think that as a moral matter, a defendant absolutely would be more accountable. And if we rejected Patrick, would we be able to account for that moral culpability in assigning the levels as opposed to not assigning the levels at issue here? I don't think you would, and I know this Court is sitting in bank, so of course it is not bound by Patrick. But I would say that I think Patrick and the Second Circuit's decision in Lewis are better reasoned based on the plain language of and the intersection of these two guideline provisions. And going back to these application notes... I know you criticize the Fourth Circuit's opinion in Moore on at least other grounds. Doesn't your argument mean that the defendant in that case would have been responsible, would have gotten the enhancement for another person in the conspiracy's technical use, technical abilities, the level of skill enhancement? I don't see how you can not have one and not the other. I understand, Judge Chioda. But that can't be right. No, but I would point out two things about the concern about how our argument applies to the three preceding subdivisions, 3B1.1, 3B1.2, and 3B1.3. So Moore was involved with 3B1.3, and the Court said that like the other two provisions, that's a status-based provision. It's not. It is the abuse of a position of trust or a special skill. That's not a status. That's an act or omission for which a defendant can be held accountable. And I would direct the Court's attention, there's a Second Circuit decision making that very point. It's an unpublished decision. Okay, so that's a fair criticism of Moore, but are you saying the bottom line in Moore was wrong? I do think that Moore was incorrect, because as I understand Moore, it was saying that the default relevant conduct principles don't apply to any of 3B1.1 to 3B1.3. And I think it's wrong for two reasons. First off, 3B1.1 and 3B1.2 are provisions that focus on a defendant's post hoc status. It's something that a court determines at sentencing, whether a defendant was an organizer or leader or had a mitigating role. A defendant is not being held accountable under the relevant conduct guideline for the fact that a court at sentencing is going to find them to be an organizer or leader. That's not an act or omission within the scope of or in furtherance of the conspiracy. Why wouldn't the act be being the organizer? But again, being the organizer, that's not it. Because of that status? I think it is, and I don't think... I see, so then you say that falls out of acts or omissions. So B doesn't apply, is that how you... No, I'm not saying... I think it does apply. There's a difference between whether or not application of the relevant conduct guideline is going to matter in the ultimate determination, and whether or not a defendant is accountable. To take an example, there are some guideline provisions that say that if a defendant has a prior conviction for a certain provision, you increase their guideline levels by X numbers. Now, the fact that a defendant has a prior conviction says nothing about whether or not... That's not an act or omission within the scope or in furtherance of the conspiracy. So that's an instance in where, yes, the defendant is accountable under relevant conduct guideline principles for the reasonably foreseeable acts or omissions of others within the scope and in furtherance of the conspiracy. But for purposes of that provision, it's just not going to have any effect. It's not going to have any impact. But that doesn't... The fact that in each and every case, application of the relevant guideline provisions may not matter does not mean that under the default rule set forth in section 1B.1.3A, it does not apply. If I'm following, it's certainly the case that you could say a criminal enterprise that does certain things that you foresee, it's worse being in that than being in a joint criminal activity that doesn't do those things. But it's also the case that it might be worse being in one of those conspiracies and doing the thing yourself than simply being in it and foreseeing that others do it. So the thing turns on, what were they getting at? Here, were they really trying, with the role in the offense and defendant, to be trying to single out those people who did the thing? Or were they trying to single out people who were working with others to do such things that they could foresee would be done? And... And I would go back once again to... I guess I'm still having trouble figuring out how that word others fits up with the word defendant. Well, as I noted, A1B itself uses the term the defendant in defining what a jointly undertaken criminal activity. And I would add, if indeed, again, is the word defendant an instruction? No, that's not an instruction at all. It certainly isn't a more explicit instruction, and it's not in the context of a particular guideline. If the defendant's argument is correct, it would mean that this is a rule of construction that specifies in the absence of more explicit instructions in the context of a particular guideline, or whenever the Sentencing Commission uses the term defendant as the object. That's not the guidelines that the Sentencing Commission enacted. Counsel, without relying so heavily on the defendant, why isn't it otherwise specified by the title of Part B, which is role in the offense, which I think it was the Moore court that said the whole point of this section of the guidelines, role, the word role in the offense, is to compare the different defendants and to look at one person's role as compared to another person's role. So how does your argument make sense in light of that very title? I have two answers, Judge Rickleman. The first answer is that if you look at the second sentence of the introductory commentary, it expressly says that a defendant's role in the offense encompasses all relevant conduct under Section 1B1.3A1 through 4. But then it says, and not solely on the basis of elements and acts cited in the count of conviction. That seems to be the distinction they're drawing there. No, it is, but it acknowledges the fact, Judge Rickleman, that the background, again, the background principles set forth in Section 1B1.3 apply equally to Part B of Chapter 3. So what work is the title doing, in your view? I don't, well, it gets to my second answer, which was at the time Moore was decided, which was 1994, the minor use guideline had not been enacted. The body armor guideline had not been enacted. And so I don't think that it does. The title in the offense, to begin with as a matter of statutory instruction, generally does not undermine the plain meaning of what's set forth in the statute. But if we gave it any force, it would? I don't think so. Because there's some way to read it if we gave it any force that it wouldn't undermine. I think that there is a way to read it, and I point again to the second sentence, because the second sentence expressly says that a defendant's role in the offense encompasses all of what's in the relevant conduct guideline, of course, unless otherwise specified. But we're supposed to look at text and structure. That's right. And you can't disagree that this is part of the structure, and then the minor use guideline is put into the structure of the role in the offense. Right, it is. And then we also have the body armor guideline, which immediately follows, which is Section 3B1.5, in which in a provision that uses the word defendant. I know, but those provisions, 2A versus 2B are very different, because 2A says the offense involved the use of the body armor, and so you needed to have an explanation for that one, whereas 2B says the defendant. That's right. It makes sense there. But it makes sense, Judge Rickleman, only if the word defendant did not constitute, unless otherwise specified, because what that application note says is that the term defendant, for purposes of subdivision 2B, limits a defendant's accountability to his or her own conduct that he or she aided and abetted, counseled, commanded, induced, procured, or willfully caused. Now that's Subdivision B1A. And I note what is the verb that the Sentencing Commission used here. It used the verb limits. By definition, that means that but for that application note, a defendant's accountability under the relevant conduct guideline would be broader. And that is precisely the kind of more specific or more explicit instruction in the context of a particular guideline. If the defendant is correct that the term defendant itself cabins a defendant's accountability under the relevant conduct guideline, each and every one of these application notes would have been simply irrelevant. Any further questions? Yes, just the same question I asked opposing counsel. The fact that the Commission has not acted one way or another when they've had a split for over 20 years, is that in any way acting in the government's favor or defense or it's irrelevant in our analysis? Judge Helpe, I think that first off, obviously, none of us know why the Sentencing Commission hasn't done so. All I can point to is the fact that the majority of courts that have considered the specific so-called Patrick issue have held in the government's favor. So you have that, and then you have the fact that the Sentencing Commission, over the years, has enacted application notes, as I've discussed, which do constitute more explicit instructions in the context of a particular guideline. You put that together, and I think, in our view, the best explanation is that the Sentencing Commission thinks that the contrary decisions, at least as to now, aren't worth its effort. Okay, and just one last quick question. The judge made an alternate finding that under 3553A, you would have still sentenced the same way. Even if the facts that you have adduced and have been discussing for the last 20, 30 minutes don't trigger the guideline enhancement, would it still be harmless error? Yes. Yes, absolutely, Judge Helby, and for all the reasons we set forth. I mean, the district court, during the first part of the hybrid sentencing proceedings, said that this ultimately wasn't going to matter because its ultimate sentence was going to be based on an individualized determination of the Section 3553A factors, although the court subsequently entered an order and said, you know, you can convince me otherwise, and noted that. And said it would be prudent for you to do so. That's right. But when the court then, and I would point out that with respect to this defendant, the government didn't argue that it should matter, and there is not anything in the district court's sentencing rationale that suggests that the minor use guideline, the application of that, somehow affected the sentence. To the contrary, the district court said that this was perhaps the most hopeless individual that it had seen in 37 years of sentencing. The court said that a sentence of life imprisonment was the only appropriate sentence in the case, and the district court said that it had searched this voluminous record to find if there was anything that would counsel in favor of a lower sentence, and I couldn't find it. So even if the en banc court were to overrule Patrick, the sentence would still stand? That's correct. That's correct. Thank you. Thank you. Thank you, counsel. That concludes argument in this case.